IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.:  21- |
| v. | : | DATE FILED: |
| BILL OMAR CARRASQUILLO | : | VIOLATIONS: |
| a/k/a "Omar," | | 18 U.S.C § 371 (conspiracy - 1 count) |
| a/k/a "Omi," | : | 17 U.S.C. §§ 1201(a)(1)(A), 1204(a)(1) |
| a/k/a "Target," | | (circumvention of access control device – 1 |
| a/k/a "Targetin1080p," | : | count) |
| JESSE GONZALES | | 17 U.S.C. § 506(a)(1)(A); 18 U.S.C. § |
| a/k/a "Wulfy," | : | 2319(b)(1) (reproduction of a protected work |
| MICHAEL BARONE | | – 1 count) |
| | : | 17 U.S.C. § 506(a)(1)(A); 18 U.S.C. § |
| | | 2319(b)(3) (public performance of a |
| | : | protected work – 19 counts) |
| | | 18 U.S.C. § 1029(a)(2), (c)(1)(a)(i) (access |
| | : | device fraud – 4 counts) |
| | | 18 U.S.C. § 1343 (wire fraud – 6 counts) |
| | : | 18 U.S.C. § 1014 (false statements to a bank – |
| | | 3 counts) |
| | : | 18 U.S.C. § 1957 (engaging in monetary |
| | | transactions derived from specified unlawful |
| | : | activity – 19 counts) |
| | | 18 U.S.C. § 1001 (false statement – 2 counts) |
| | : | 18 U.S.C. § 2232(a) (removal of property to |
| | | prevent seizure – 2 counts) |
| | : | 26 U.S.C. § 7201 (tax evasion – 4 counts) |
| | | 18 U.S.C. § 2 |
| | : | Notices of Forfeiture |

INDICTMENT

COUNT ONE

THE GRAND JURY CHARGES THAT:

INTRODUCTION AND BACKGROUND

At all times material to this indictment:

1.     Defendant BILL OMAR CARRASQUILLO, a/k/a "Omar," "Omi,"

"Target," and "Target1080p," was a resident and owner of property in the Eastern District of Pennsylvania and the District of New Jersey.

2.     Defendant JESSE GONZALES, a/k/a "Wulfy," was a resident of the Central District of California.

3.     Defendant MICHAEL BARONE was a resident of the Eastern District of New York.

4.     Persons 1 through 13 are individuals whose identities are known to the grand jury. Foreign Company 1 and Foreign Company 2 are foreign companies whose identities are known to the grand jury.

5.     Comcast Corporation ("Comcast") was a Video Content (defined below in Paragraph 10) and internet services provider, headquartered in the Eastern District of Pennsylvania. At certain times during the scheme, Comcast offered its Video Content through a subsidiary known as Xfinity. Comcast offered subscriptions to Video Content and internet services to its fee-paying subscribers. Much, but not all, of the Video Content offered by Comcast was protected by the Copyright Act, and Comcast was licensed to deliver the copyrighted Video Content to its subscribers. Customers who signed up to receive cable television service from Comcast were subject to terms of service which were provided to the customer and made available on Comcast's website. Comcast's terms of service provided that the service was to be used only for personal, residential, and non-commercial purposes. The terms of service expressly prohibited, among other things, reselling the Video Content in whole or in part.

6.     Verizon Fios ("Verizon") was a Video Content and internet services provider, headquartered in the Southern District of New York. Verizon offered subscriptions to

Video Content and internet services to its fee-paying customers. Much, but not all, of the Video Content offered by Verizon was protected by the Copyright Act, and Verizon was licensed to deliver the copyrighted video content to its subscribers. Customers who signed up to receive cable television service from Verizon were subject to terms of service, which were provided to the customer and made available on Verizon's website. Verizon's terms of service provided that the services were only for private, non-commercial use, and expressly prohibited rebroadcast or transmission of the Video Content.

7.    Charter Communications ("Charter") was a Video Content and internet services provider, headquartered in the District of Connecticut, and doing business as Spectrum. Charter offered subscriptions to Video Content and internet services to its fee-paying subscribers. Much, but not all, of the video content offered by Charter was protected by the Copyright Act, and Charter was licensed to deliver the copyrighted Video Content to its subscribers. Customers who signed up to receive cable television service from Charter were subject to terms of service, which were provided to the customer and made available on Charter's website. Charter's terms of service provided that Charter's services were for the subscriber's personal, non-commercial use. Charter's terms of service expressly prohibited transmission of Charter's Video Content to any person who was not a member or guest of the subscriber's household.

8.    DirecTV was a Video Content provider, headquartered in the Central District of California. DirecTV offered subscriptions to Video Content to its fee-paying subscribers. Much, but not all, of the Video Content offered by DirecTV was protected by the Copyright Act, and DirecTV was licensed to deliver the copyrighted video content to its subscribers. Customers who signed up to receive cable television services from DirecTV were

subject to terms of service which were provided to the customer and made available on DirecTV's website. DirecTV's terms of service provided that DirecTV service was provided to the subscriber solely for private, non-commercial use, enjoyment, and home viewing. The terms of service expressly prohibited, among other things, rebroadcasting, transmitting, or performing the Video Content.

9.      Frontier Communications was a Video Content provider, headquartered in the District of Connecticut. Frontier offered subscriptions to Video Content to its fee-paying subscribers. Much, but not all, of the Video Content offered by Frontier was protected by the Copyright Act, and Frontier was licensed to deliver the copyrighted video content to its subscribers. Customers who signed up to receive cable television services from Frontier were subject to terms of service which were provided to the customer and made available on Frontier's website. Frontier's terms of service provided that the Video Content could be used only for the subscriber's private non-commercial use and enjoyment, and expressly prohibited rebroadcasting or transmitting the Video Content.

10.      Comcast, Verizon, Charter, DirecTV, and Frontier (collectively, the "Video Content Providers") acquired and curated their collections of Video Content—which is defined, for the purposes of this Indictment, as movies, television shows, and other audiovisual content—based on their particularized assessments of what their subscribers would find to be entertaining, useful, or otherwise appealing. The Video Content Providers compiled their collections of Video Content in a manner that made them easily accessible to their subscribers. The Video Content Providers also provided delivery mechanisms that allowed subscribers to access the Video Content in a variety of convenient manners and platforms.

11.      Much, but not all, of the Video Content in the collections of the Video

Content Providers was protected by copyright.

12.     The Video Content Providers delivered their Video Content in encrypted format. In order for a subscriber to access Video Content, the respective Video Content Provider provided the subscriber with a set top box, access card, or other device, which removed the Video Content Provider's encryption from the Video Content and concurrently applied High-Bandwidth Digital Content Protection ("HDCP") to the Video Content.

13.     HDCP was a technological measure that effectively controls access to works, including copyrighted works, and protects the rights of copyright owners. Specifically, HDCP was a form of encryption designed to prevent copying of Video Content as it travels across digital interfaces, including between the equipment provided by the Video Content Provider and the television or other device used by a subscriber to view the content. Video Content protected by HDCP is only viewable on an HDCP-compliant device. In order for a device to be HDCP-compliant, the manufacturer of the device must have agreed to various conditions, including that the device was not designed to make copies.

14.     High-Definition Multimedia Interface ("HDMI") cables are often used to transmit Video Content across digital interfaces, including from a set top box to a television.

15.     Video Content provided by the Video Content Providers could not have been copied without removing HDCP.

16.     Foreign Company 2 was a provider of public and private cloud products, headquartered in Montreal, Canada.

17.     DataCamp Ltd. operated a content delivery network, which was comprised of a geographically distributed group of servers that were designed to provide fast delivery of content over the internet. DataCamp was headquartered in the United Kingdom, and had data

centers in the United States and other countries.

18.     CDN77 was a global content delivery network offered by DataCamp Ltd.

19.     A merchant processor was a company that handled electronic payment transactions on behalf of a merchant, allowing the merchant to accept payment by way of credit card, debit card, or other electronic payment. In general, a merchant processor relayed the payment information to the customer's bank (known as the "issuing bank") and the merchant's bank (known as the "acquiring bank."). The merchant processor confirmed from the customer's bank that the payment information was valid. Upon confirmation that the payment information was valid, the merchant processor arranged to have the necessary funds routed from the customer's bank to the merchant's bank, ultimately for the benefit of the merchant.

20.     In order to obtain a merchant processing account, a merchant typically submitted an application to the merchant processor, which included information that allowed the merchant processor to assess whether the merchant presented a suitable risk profile. Among other factors, most merchant processors considered the nature of the merchant's business, the merchant's credit history, and the merchant's history of chargebacks, which is when a customer initiates a reversal of a payment.

21.     Merchant processors aimed to minimize the risk of chargebacks because, under certain circumstances, such as when a chargeback is initiated after the merchant has become insolvent, the merchant processor may be financially liable to reimburse the customer.

22.     Stripe was a technology company that offered software that, among other things, allowed merchants to accept payments from their customers. Stripe partnered with Wells Fargo Bank, N.A.—a financial institution insured by the Federal Deposit Insurance Corporation ("FDIC")—to collect payments from customers and then distribute the proceeds into the

merchant's bank account.

23.     Bank of America Merchant Services ("BOAMS") was a merchant processor that allowed merchants to accept payments from their customers. From in or about January 2019 through on or about June 2020, BOAMS was a joint venture between Bank of America and First Data (now Fiserv). BOAMS partnered with Bank of America, N.A.—an FDIC-insured institution—to collect payments from customers and then distribute the proceeds into the merchant's bank account.

24.     Nuvei Technologies ("Nuvei") was a technology company that offered software that, among other things, allowed merchants to accept payments from their customers. Nuvei partnered with Wells Fargo Bank—an FDIC-insured institution—to collect payments from customers and then distribute the proceeds into the merchant's bank account.

25.     Worldpay was a merchant processor that allowed merchants to accept payments from their customers. Worldpay partnered with Fifth Third Bank—an FDIC-insured institution—to collect payments from customers and then distribute the proceeds into the merchant's bank account.

26.     Electronic Merchant Services ("EMS") was a merchant processor that allowed merchants to accept payments from their customers. EMS partnered with a variety of FDIC-insured financial institutions, including BMO Harris Bank, N.A., Central Bank of St. Louis, Esquire Bank, Merrick Bank, and Chesapeake Bank Kilmarnock.

27.     From at least in or about March 2016 to on or about at least November 23, 2019, in the Eastern District of Pennsylvania, the District of New Jersey, the Central District of California, and elsewhere, defendants

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**

**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p,"**
**JESSE GONZALES,**
**a/k/a "Wulfy," and**
**MICHAEL BARONE**

conspired and agreed with Person 1, and others, known and unknown to the grand jury, to

commit offenses against the United States, namely:

        a.      Copyright Infringement, that is, willfully, and for the purpose of

commercial advantage and private financial gain, infringing a copyright by the reproduction of at

least ten copies of one or more copyrighted works, namely motions pictures and other

audiovisual works, without the authorization of the copyright holder, with a total retail value of

more than $2,500, during a 180-day period, in violation of Title 17, United States Code, Section

506(a)(1)(A), and Title 18, United States Code, Section 2319(b)(1);

        b.      Copyright Infringement, that is, willfully, and for purposes of

commercial advantage and private financial gain, infringing copyrights in motion pictures and

other audiovisual works, by streaming, that is, publicly performing the work over the internet, in

violation of Title 17, United States Code, Section 506(a)(1)(A), and Title 18, United States Code,

Section 2319(b)(3);

        c.      Circumvention of Access Controls, that is, willfully, and for the

purpose of commercial advantage and private financial gain, circumventing a technological

measure that effectively controls access to one or more works protected under Title 17 of the

United States Code, namely, television shows and movies offered by the Video Content

Providers, and others, in violation of Title 17, United States Code, Sections 1201(a)(1)(A), and

1204(a)(1);

        d.      Access Device Fraud, that is, knowingly and with intent to

defraud, using unauthorized access devices including account numbers, access card numbers, serial numbers, receiver ID numbers, media access control ("MAC") addresses, and equipment (collectively, "Access Devices"), and by such conduct, which affected interstate and foreign commerce, obtaining property and services valued at $1,000 or more, in violation of Title 18, United States Code, Sections 1029(a)(2) and (c)(1)(a)(i); and

      e.    Wire Fraud, that is, devising and intending to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and transmitting and causing certain wire communications to be transmitted in interstate and foreign commerce, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

<u>**MANNER AND MEANS**</u>

It was part of the conspiracy that:

28.    For more than three years, defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and others, known and unknown to the grand jury, conspired to fraudulently obtain Video Content and subscriber fees from, and at the expense of, the Video Content Providers, and money and merchant processing accounts from the Merchant Processors (defined below in Paragraph 44).

29.    During the period of time set forth above, defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, as well as others, known and unknown to the grand jury, operated a Video Content delivery service, which was called at various times REBOOT, GEARS TV, RELOADED, and GEARS RELOADED (collectively, the "Infringing Service"). The Infringing Service delivered Video Content, including television shows and movies, to subscribers to the Infringing Service, in exchange for

payment.

30.     Along with the Infringing Service, defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and others, known and unknown to the grand jury, offered at various times to the subscribers to the Infringing Service a library, called "STREAMS R US" or "SRU," of motion pictures and other Video Content that they had copied and/or caused to be copied.

31.     Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and others, known and unknown to the grand jury, obtained access to the Video Content, among other ways, by subscribing, and/or causing others to subscribe, to residential cable television and video services from Video Content Providers including Comcast, Verizon, Charter, DirecTV, and Frontier.

32.     Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and others, known and unknown to the grand jury, caused the Video Content Providers to provide them with numerous Access Devices, including set top boxes, which allowed the defendants to access Video Content offered by the Video Content Providers.

33.     Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and others, known and unknown to the grand jury, obtained, and/or caused to be obtained, and set up the Access Devices in a variety of locations. They elected to place the Access Devices in at least seven different homes in Philadelphia, Pennsylvania, as well as, at various times during the conspiracy, in other places including California and New York.

34.     Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES,

MICHAEL BARONE, Person 1, and others, known and unknown to the grand jury, imported, or caused to be imported, from China, encoders that were designed to strip HDCP from the Video Content of multiple Access Devices at a time, which allowed the Video Content to be transmitted over the internet and copied to computer servers operated and/or controlled by the conspirators.

35. Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and others, known and unknown to the grand jury, did not use the Access Devices to view the Video Content for their own personal use. Instead, the conspirators caused each Access Device to be tuned to a particular channel and then connected to an encoder that stripped HDCP from the Video Content. The conspirators then caused the unencrypted Video Content to be transmitted to dedicated servers, including DataCamp Ltd. servers, paid for by the conspirators, which DataCamp Ltd. servers were located in the United States, where the Video Content was made available to subscribers of the Infringing Service. The conspirators also caused the unencrypted Video Content to be transferred to dedicated servers at Foreign Company 2, paid for by the conspirators, where the Video Content was stored, and made available, in an "on-demand" format, for a period of approximately 24 to 48 hours to subscribers of the Infringing Service.

36. Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and others, known and unknown to the grand jury, established websites, including gearsservers.com, gearsservers.net, omarsvideos.com, omarsvideos2.com, hostingbros.net, gearsiptvnow.com, targetcreates.com, mayfairguides.com, mayfairguides.net, and reloadedview.com, which allowed subscribers to access the Infringing Service and related software, among other things, to subscribe to the Infringing Service, access the Video Content, and submit inquiries and requests (which were known as "tickets").

37.     Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and the other conspirators did not at any point seek or obtain authorization from the copyright holders or licensees to transmit, copy, or stream the Video Content.

38.     Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and the other conspirators did not at any point disclose to the Video Content Providers that, in signing up for residential services at multiple locations, they intended to copy, transmit, and stream the Video Content to thousands of their own subscribers.

39.     Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and others, known and unknown to the grand jury, publicized the Infringing Service by way of producing videos that were posted to a YouTube channel called "TARGETIN1080P."

40.     Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and others, known and unknown to the grand jury, advertised and administered the Infringing Service, among other ways, by interacting with each other and the subscribers to the Infringing Service via social media platforms including Facebook, Instagram, Discord, and Google Hangouts.

41.     Person 1, and others, known and unknown to the grand jury, developed software which served as a subscriber interface, akin to a TV Guide, permitting users to see a listing of particular programming and select particular programing for viewing.

42.     Defendants BILL OMAR CARRASQUILLO, Person 1, and others, known and unknown to the grand jury, caused software described in Paragraph 41 to be incorporated into the Infringing Service.

43.    Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and others, known and unknown to the grand jury, collected from subscribers to the Infringing Service more than $30 million in subscriber fees.

44.    In order to accept those subscriber fees, defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, and others, known and unknown to the grand jury, applied for and, in some cases, obtained merchant processing accounts at Stripe, BOAMS, EMS, Nuvei, and World Pay, among others (collectively, the "Merchant Processors"). In order to conceal the true nature of the Infringing Service, defendants CARRASQUILLO, GONZALES, and others, known and unknown to the grand jury, falsely described, and caused to be falsely described, the nature of the Infringing Service, and the identity of its owners, on applications to the Merchant Processors and, in some instances, their FDIC-insured partnering banks, including Wells Fargo Bank, N.A., Bank of America, N.A, Esquire Bank, and BMO Harris Bank, N.A.

45.    In support of their applications for merchant processing services, Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, and others, known and unknown to the grand jury, also submitted fraudulent documents, including false and unfiled Form 1040 tax returns for defendant CARRASQUILLO for tax years 2016 and 2017, a false Form Schedule C for defendant GONZALES for tax year 2018, and a fraudulent "Business Portfolio Purchase Agreement" that purported to show that, as of June 3, 2019 at 3:00PM, defendant GONZALES had sold a business that "provid[ed] an online customer base with web hosting capabilities" to defendant CARRASQUILLO in exchange for a $3,000,000 payment and twenty-four monthly payments of $50,000.

46.    Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, Person 1, and others, known and unknown to the grand jury,

misrepresented, concealed, and hid, caused to be misrepresented, concealed and hidden, and

attempted to misrepresent, conceal and hide the actions done in furtherance of the conspiracy.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, defendants BILL

OMAR CARRASQUILLO, JESSE GONZALES, MICHAEL BARONE, and others known and

unknown to the grand jury, committed the following overt acts, among others, in the Eastern

District of Pennsylvania and elsewhere:

### ESTABLISHING SHELL CORPORATIONS

1.     On or about September 13, 2016, defendant BILL OMAR

CARRASQUILLO caused to be incorporated Hosting bros Inc. with the Pennsylvania

Department of State.

2.     On or about September 4, 2018, Person 2 caused Reloaded LLC to be

registered with the Pennsylvania Department of State.

3.     On or about April 12, 2019, defendant BILL OMAR CARRASQUILLO

caused Gears Reloaded LLC to be registered with the Pennsylvania Department of State.

### OBTAINING VIDEO CONTENT

4.     On or about June 7, 2016, defendant BILL OMAR CARRASQUILLO

opened Comcast account number x0198, in order to receive Video Content provided by Comcast

at 3412 N. Hope Street, Philadelphia, PA.

5.     On or about July 27, 2016, defendant BILL OMAR CARRASQUILLO

opened DirecTV account number x0509 in order to receive Video Content provided by DirecTV

at 3412 N. Hope Street, Philadelphia, PA.

6.     On or about June 15, 2016, defendant BILL OMAR CARRASQUILLO

caused to be opened Verizon account number x0001, in order to receive Verizon Video Content

at 3412 N. Hope Street, Philadelphia, PA.

7.     On or about April 22, 2017, defendant JESSE GONZALES opened

Spectrum (Charter) Account number x4554 in order to receive Spectrum Video Content at 9748

Terradell Street, Pico Rivera, California.

8.     On or about April 22, 2017, defendants MICHAEL BARONE and JESSE

GONZALES engaged in a discussion about how to set up Access Devices and encoders at

defendant GONZALES'S house.

9.     On or about March 9, 2019, defendant JESSE GONZALES and Person 3

caused Frontier Account number x9195 to be opened in order to receive Frontier Video Content

at 11711 Ringwood Avenue, Norwalk, California.

### OBTAINING DEVICES TO CIRCUMVENT HDCP

10.     On or about July 1, 2016, defendant BILL OMAR CARRASQUILLO

caused a wire transfer in the amount of $1,570 from a Wells Fargo Bank account that he

controlled to Foreign Company 1, known to the grand jury.

11.     On or about April 14, 2017, defendants BILL OMAR CARRASQUILLO

and JESSE GONZALES caused a wire transfer in the amount of $6,420 to Foreign Company 1,

as payment for two 16-port encoders and one 8-port HDMI encoder.

12.     On or about January 7, 2019, defendants BILL OMAR CARRASQUILLO

and JESSE GONZALES caused a wire transfer of $9,890 to Foreign Company 1, as payment for

five 16-port HDMI encoders.

13.     Between in or about July 2016 through in or about August 2019,

defendants CARRASQUILLO and GONZALES caused HDMI encoders to be imported into,

among other places, the Eastern District of Pennsylvania, and the Central District of California, each such importation constituting a separate overt act.

### DISTRIBUTING CONTENT TO SUBSCRIBERS OF THE INFRINGING SERVICE

14.     On or about September 19, 2016, defendant MICHAEL BARONE communicated with Person 1 about having Person 1 provide services to the Infringing Service.

15.     On or about October 6, 2016, defendant BILL OMAR CARRASQUILLO caused to be opened an account with Foreign Company 2 bearing the customer identification number rj314535-ovh.

16.     On or about May 11, 2017, defendant BILL OMAR CARRASQUILLO caused to be opened an account with Foreign Company 2 bearing the customer identification number jt303047-ovh.

17.     On or about September 13, 2017, defendant BILL OMAR CARRASQUILLO caused to be opened a customer account with CDN77.

18.     On the dates set forth below in Counts Four through Twenty-Two, defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, Person 1, and others known and unknown to the grand jury, caused the public performance of the works set forth in those counts in the Eastern District of Pennsylvania and elsewhere, each such performance constituting a separate overt act.

### ADVERTISING THE SCHEME

19.     On or about February 5, 2016, defendant BILL OMAR CARRASQUILLO started a YouTube channel entitled TARGETin1080p.

20.     On or about March 13, 2018, defendant BILL OMAR CARRASQUILLO caused a video to be posted to the YouTube channel, in which he discussed the Infringing

Service.

21.    On or about May 24, 2018, defendant BILL OMAR CARRASQUILLO caused a video called "Reloaded TV Live Show" to be posted to the YouTube channel.

22.    On or about September 23, 2018, defendant BILL OMAR CARRASQUILLO caused a video to be posted to the YouTube channel, in which he discussed the Infringing Service.

23.    On or about January 29, 2019, defendant BILL OMAR CARRASQUILLO caused a video called "The Best IPTV Service 2019 Gears Reloaded" to be posted to the YouTube Channel.

24.    On or about May 26, 2019, defendants BILL OMAR CARRASQUILLO and JESSE GONZALES caused a video called "How to Order Gears Reloaded" to be posted to the YouTube channel.

## DISTRIBUTING THE PROFITS

25.    On or about April 24, 2017, defendant BILL OMAR CARRASQUILLO caused $2,000 to be transferred to defendant MICHAEL BARONE.

26.    On or about April 24, 2017, defendant BILL OMAR CARRASQUILLO caused $1,450 to be transferred to defendant JESSE GONZALES.

27.    On or about May 31, 2017, defendant BILL OMAR CARRASQUILLO caused $1,000 to be transferred to defendant MICHAEL BARONE.

28.    On or about August 3, 2017, defendant BILL OMAR CARRASQUILLO caused $2,740.80 to be transferred to Person 1.

29.    On or about December 21, 2017, defendant BILL OMAR CARRASQUILLO caused $2,000 to be transferred to defendant JESSE GONZALES.

30.     On or about February 16, 2018, defendant BILL OMAR
CARRASQUILLO caused $2,000 to be transferred to defendant JESSE GONZALES.

31.     On or about April 30, 2018, defendant BILL OMAR CARRASQUILLO
caused $2,000 to be transferred to defendant MICHAEL BARONE.

32.     On or about May 3, 2018, defendant BILL OMAR CARRASQUILLO
caused $17,680 to be transferred to Person 1.

33.     On or about June 7, 2018, defendant JESSE GONZALES caused $2,000
to be transferred to defendant MICHAEL BARONE.

34.     On or about June 7, 2018, defendant JESSE GONZALES caused $21,298
to be transferred to Person 1.

35.     On or about August 16, 2018, defendant JESSE GONZALES caused
$208,344.98 to be transferred to defendant BILL OMAR CARRASQUILLO.

## CONCEALING THE SCHEME

36.     In or about July or August 2019, defendant BILL OMAR
CARRASQUILLO, and others, known and unknown to the grand jury, deleted or removed from
public access YouTube videos featuring defendant CARRASQUILLO discussing the Infringing
Service.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT**:

      1.     The allegations set forth in Paragraphs 1 through 26, 28 through 46, and Overt Acts 1 through 36 of Count One are incorporated by reference.

      2.     From at least in or about March 2016 to at least in or about November 2019, in the Eastern District of Pennsylvania and elsewhere, defendants

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p,"**
**JESSE GONZALES,**
**a/k/a "Wulfy," and**
**MICHAEL BARONE,**

Person 1, and others, known and unknown to the grand jury, did willfully, and for the purpose of commercial advantage and private financial gain, circumvent and attempt to circumvent a technological measure that effectively controls access to one or more works protected under Title 17 of the United States Code, namely, audiovisual television and movie programming offered by the Video Content Providers, and others.

      All in violation of Title 17, United States Code, Sections 1201(a)(1)(A), 1204(a)(1), and Title 18, United States Code, Section 2.

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT**:

1. The allegations set forth in Paragraphs 1 through 26, 28 through 46, and Overt Acts 1 through 36 of Count One are incorporated by reference.

2. From on or about May 24, 2019 to on or about November 20, 2019, in the Eastern District of Pennsylvania, and elsewhere, defendants

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p," and**
**JESSE GONZALES,**
**a/k/a "Wulfy,"**

Person 1, and others, known and unknown to the grand jury, did willfully, and for the purpose of commercial advantage and private financial gain, infringe the copyright of one or more copyrighted works, that is, motions pictures and other audiovisual works offered by the Video Content Providers, and others, by reproducing, during a 180-day period, at least 10 copies or more of the copyrighted works which had a total retail value of more than $2,500.

In violation of Title 17, United States Code, Section 506(a)(1) and Title 18, United States Code, Sections 2319(b)(1) and 2.

## COUNTS FOUR THROUGH TWENTY-TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       The allegations set forth in Paragraphs 1 through 26, 28 through 46, and Overt Acts 1 through 36 of Count One are incorporated by reference.

2.       On or about the dates listed below, in the Eastern District of Pennsylvania, and elsewhere, defendants

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p,"**
**JESSE GONZALES,**
**a/k/a "Wulfy,"**

Person 1, and others, known and unknown to the grand jury, did willfully, and for purposes of commercial advantage and private financial gain, infringe copyrights in the following motion pictures and other audiovisual works, by streaming, that is, publicly performing the work over the internet, each instance of which constitutes a separate count.

| Count | Date | Works |
|-------|------|-------|
| 4 | February 11, 2019 | Steve Jobs |
| 5 | March 4, 2019 | Man of Steel |
| 6 | March 4, 2019 | Broke and Famous |
| 7 | March 4, 2019 | Boston Red Sox v. New York Mets |
| 8 | March 4, 2019 | The Jump |
| 9 | April 5, 2019 | Southampton v. Liverpool |
| 10 | April 11, 2019 | Bones |
| 11 | April 14, 2019 | Seattle KIRO News Broadcast |

| 12 | April 14, 2019 | Tampa Bay Lightning v. Columbus Blue Jackets |
| 13 | April 14, 2019 | Game of Thrones |
| 14 | May 3, 2019 | Toronto Raptors v. Philadelphia 76ers |
| 15 | May 31, 2019 | Full Metal Jacket |
| 16 | August 5, 2019 | Who Wants to Be a Millionaire |
| 17 | August 5, 2019 | First Take |
| 18 | November 20, 2019 | The Predator |
| 19 | November 20, 2019 | Wall Street: Money Never Sleeps |
| 20 | November 20, 2019 | Shameless |
| 21 | November 20, 2019 | Open Water 3: Cage Dive |
| 22 | November 20, 2019 | The Walking Dead |

All in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Sections 2319(b)(3) and 2.

## COUNTS TWENTY-THREE THROUGH TWENTY-SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      The allegations set forth in Paragraphs 1 through 26, 28 through 46, and Overt Acts 1 through 36 of Count One are incorporated by reference.

2.      During the one-year, or shorter, time periods described below, in the Eastern District of Pennsylvania, the Central District of California, the Southern District of New York, and elsewhere, defendants

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p,"**
**JESSE GONZALES,**
**a/k/a "Wulfy," and**
**MICHAEL BARONE,**

Person 1, and others, known and unknown to the grand jury, knowingly and with intent to defraud, used, and caused to be used, unauthorized Access Devices, and by such conduct, which affected interstate and foreign commerce, obtained property and services valued at $1,000 or more.

| Count | Beginning Date | Ending Date | Charged Defendants |
|-------|----------------|-------------|---------------------|
| 23 | June 6, 2016 | June 5, 2017 | **Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, and MICHAEL BARONE** |
| 24 | June 6, 2017 | June 5, 2018 | **Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, and MICHAEL BARONE** |
| 25 | June 6, 2018 | June 5, 2019 | **Defendants BILL OMAR CARRASQUILLO and JESSE GONZALES** |

| 26 | June 6, 2019 | November 20, 2019 | Defendants BILL OMAR CARRASQUILLO and JESSE GONZALES |

All in violation of Title 18, United States Code, Sections 1029(a)(2) and

(c)(1)(a)(i) and 2.

## COUNTS TWENTY-SEVEN THROUGH THIRTY-TWO

**THE GRAND JURY FURTHER CHARGES THAT**:

      1.     The allegations set forth in Paragraphs 1 through 26, 28 through 46, and Overt Acts 1 through 36 of Count One are incorporated by reference.

      2.     From at least in or about March 2016 to at least in or about November 2019, in the Eastern District of Pennsylvania and elsewhere, defendants

**BILL OMAR CARRASQUILLO,**
a/k/a "Omar,"
a/k/a "Omi,"
a/k/a "Target,"
a/k/a "Targetin1080p,"
**JESSE GONZALES,**
a/k/a "Wulfy," and
**MICHAEL BARONE,**

Person 1, and others, known and unknown to the grand jury, devised and intended to devise a scheme to defraud the Merchant Processors and the Video Content Providers, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

## MANNER AND MEANS

It was part of the scheme that:

      3.     On or about each of the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendants

**BILL OMAR CARRASQUILLO,**
a/k/a "Omar,"
a/k/a "Omi,"
a/k/a "Target,"
a/k/a "Targetin1080p,"
**JESSE GONZALES,**
a/k/a "Wulfy," and
**MICHAEL BARONE,**

Person 1, and others, known and unknown to the grand jury, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Start Point | End Point | Description | Charged Defendants |
|---|---|---|---|---|---|
| 27 | September 21, 2016 | Philadelphia, PA | Utah | Web Login to PayPal to make payments of $129 and $34.32 to GoDaddy.com, LLC | **Defendants BILL OMAR CARRASQUILLO, and MICHAEL BARONE** |
| 28 | November 7, 2016 | Philadelphia, PA | Quebec, CA | Payment of $3,426 for Foreign Company 2 account rj314535-ovh | **Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, and MICHAEL BARONE** |
| 29 | January 9, 2017 | Philadelphia, PA | Utah | Web Login to PayPal to make payment of $119 to Foreign Company 2 | **Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, and MICHAEL BARONE** |
| 30 | January 19, 2017 | Philadelphia, PA | Quebec, CA | Payment of $1,129 for Foreign Company 2 account rj314535-ovh | **Defendants BILL OMAR CARRASQUILLO, JESSE GONZALES, and MICHAEL BARONE** |
| 31 | March 3, 2018 | Philadelphia, PA | Quebec, CA | Payment of $952.90 for Foreign Company 2 | **Defendants BILL OMAR CARRASQUILLO, and JESSE** |

| | | | | account jt303047-ovh | **GONZALES, and MICHAEL BARONE** |
|---|---|---|---|---|---|
| 32 | June 3, 2019 | Philadelphia, PA | Quebec, CA | Payment of $3,061.73 for Foreign Company 2 account jt303047-ovh | **Defendants BILL OMAR CARRASQUILLO, and JESSE GONZALES** |

All in violation of Title 18, United States Code, Section 1343.

<u>**COUNTS THIRTY-THREE THROUGH THIRTY-FIVE**</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.      The allegations set forth in Paragraphs 1 through 26, 28 through 46, and Overt Acts 1 through 36 of Count One are incorporated by reference.

        2.      On or about the dates listed below, in the Eastern District of Pennsylvania and elsewhere, defendants

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p," and**
**JESSE GONZALES,**
**a/k/a "Wulfy,"**

knowingly made and caused to be made to the banks listed below the false statements described below for the purpose of influencing in any way the action of the bank on the application for merchant processing services, each constituting a separate count:

| <u>Count</u> | <u>Date</u> | <u>Financial Institution</u> | <u>False Statement(s)</u> |
|---|---|---|---|
| 33 | May 7, 2018 | Esquire Bank, an FDIC-insured financial institution | In connection with an application to EMS and Esquire Bank for merchant processing services, defendant BILL OMAR CARRASQUILLO falsely represented that the "Type of Goods Sold" by Hosting Bros, Inc. was "Server Hosting Company." |

| 34 | June 14, 2019 | Wells Fargo Bank, N.A., an FDIC-insured financial institution | In connection with an application to Nuvei and Wells Fargo Bank, N.A. for merchant processing services, defendants BILL OMAR CARRASQUILLO and JESSE GONZALES: (1) falsely represented that the "Product or Service Sold" by GEARS SERVER was "Web Hosting Services"; (2) provided false, unfiled tax returns, namely a Form 1040 purporting to be for defendant BILL OMAR CARRASQUILLO, for tax years 2016 and 2017; and (3) provided a false Business Portfolio Purchase Agreement that purported to show that on June 3, 2019, defendant JESSE GONZALES had sold a business engaged in "providing an online customer base with web hosting capabilities," to defendant BILL OMAR CARRASQUILLO in exchange for a $3,000,000 down payment and twenty-four monthly payments of $50,000. |
| 35 | June 14, 2019 | BMO Harris Bank, N.A., an FDIC-insured financial institution | In connection with an application to EMS and BMO Harris Bank, N.A., for merchant processing services, defendants BILL OMAR CARRASQUILLO and JESSE GONZALES: (1) falsely represented that the "Type of Goods Sold" by Gears Servers was "Web Hosting;" and (2) provided a false Business Portfolio Purchase Agreement that purported to show that on June 3, 2019, defendant JESSE GONZALES had sold a business engaged in "providing an online customer base with web hosting capabilities," to defendant BILL OMAR CARRASQUILLO in exchange for a $3,000,000 down payment and twenty-four monthly payments of $50,000. |

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNTS THIRTY-SIX THROUGH FIFTY-FOUR

**THE GRAND JURY FURTHER CHARGES THAT**:

1.     The allegations set forth in Paragraphs 1 through 26, 28 through 46, and Overt Acts 1 through 36 of Count One are incorporated by reference.

2.     On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendants

**BILL OMAR CARRASQUILLO,**
a/k/a "Omar,"
a/k/a "Omi,"
a/k/a "Target,"
a/k/a "Targetin1080p,"and
**JESSE GONZALES,**
a/k/a "Wulfy"

did knowingly engage and attempt to engage in monetary transactions listed below, each such transaction constituting a separate count, by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, described more fully below, and such property was derived from specified unlawful activities, that is: (1) copyright infringement, in violation of Title 17, United States Code, Section 506(a)(1) and Title 18, United States Code, Sections 2319(b)(1), and 1029(a)(2) and (c)(1)(a)(i); (2) access device fraud, in violation of Title 18, United States Code, Section 1029(a)(2) and (c)(1)(a)(i); and (3) wire fraud, in violation of Title 18, United States Code, Section 1343.

| Count | Date | Amount | Defendant | Description |
|-------|------|--------|-----------|-------------|
| 36 | 11/22/2017 | $80,000.00 | BILL OMAR CARRASQUILLO | A withdrawal of funds from Wells Fargo Bank account ending in x8602 for the purpose of purchasing a 2018 Chevrolet Corvette. |

| 37 | 12/22/2017 | $78,233.80 | BILL OMAR CARRASQUILLO | A withdrawal of funds from Wells Fargo Bank account ending in x8602 for the purpose of purchasing a 2018 Dodge Durango. |
|---|---|---|---|---|
| 38 | 3/6/2018 | $91,500.00 | BILL OMAR CARRASQUILLO | A withdrawal of funds from TD Bank account ending in x0532 for the purpose of purchasing a 2018 Jeep Wrangler and a 2018 Dodge Charger. |
| 39 | 5/29/2018 | $205,000.00 | BILL OMAR CARRASQUILLO | A withdrawal of funds from TD Bank account ending in x0532 for the purpose of purchasing a 2018 Bentley Flying Spur. |
| 40 | 9/4/2018 | $646,849.92 | BILL OMAR CARRASQUILLO | A withdrawal of funds from Bank of America account ending in x5230 for the purpose of purchasing a property on Fox Chase Court, in Woolwich Twp., NJ. |
| 41 | 10/23/2018 | $34,000.00 | BILL OMAR CARRASQUILLO | A withdrawal of funds from Bank of America account ending in x5230 for the purpose of purchasing jewelry. |
| 42 | 11/6/2018 | $140,571.00 | BILL OMAR CARRASQUILLO | A withdrawal of funds from Bank of America account ending in x5230 for the purpose of purchasing a 2018 Tesla Model S. |
| 43 | 11/8/2018 | $233,245.09 | BILL OMAR CARRASQUILLO | A withdrawal of funds from Bank of America account ending in x5230 for the purpose of purchasing a 2019 Lamborghini Urus. |

| 44 | 12/4/2018 | $158,711.15 | BILL OMAR CARRASQUILLO | A withdrawal of funds from Bank of America account ending in x5230 for the purpose of purchasing a 2019 Mercedes G550. |
| 45 | 12/18/2018 | $233,272.34 | BILL OMAR CARRASQUILLO | A transfer of funds from Bank of America account ending in x5230 for the purpose of purchasing a 2019 Rolls Royce Cullinan. |
| 46 | 12/20/2018 | $80,000.00 | BILL OMAR CARRASQUILLO | A withdrawal of funds from Bank of America account ending in x5230 for the purpose of purchasing a 2019 Mercedes GLE43. |
| 47 | 12/20/2018 | $282,242.62 | BILL OMAR CARRASQUILLO, JESSE GONZALES | A teller transfer of funds from GONZALES to CARRASQUILLO. |
| 48 | 2/25/2019 | $94,243.98 | BILL OMAR CARRASQUILLO | A check from Bank of America account ending in x5230 for the purpose of purchasing a 2019 Dodge Challenger. |
| 49 | 3/11/2019 | $195,805.97 | BILL OMAR CARRASQUILLO | A withdrawal of funds from Bank of America account ending in x5230 for the purpose of purchasing a 2019 Mercedes GT63C4S. |
| 50 | 3/27/2019 | $92,000.00 | BILL OMAR CARRASQUILLO | A payment to a Philadelphia-area jeweler for the purpose of purchasing jewelry. |
| 51 | 6/28/2019 | $533,000.00 | BILL OMAR CARRASQUILLO | A withdrawal of funds from the TD Bank account ending in x4218 for the purpose of purchasing a 2019 Lamborghini Aventador, and other vehicles. |

| 52 | 8/21/2019 | $162,000.00 | BILL OMAR CARRASQUILLO | A withdrawal of funds from TD Bank account ending in x0356 for the purpose of purchasing a 2019 Acura NSX. |
| 53 | 9/16/2019 | $100,000.00 | BILL OMAR CARRASQUILLO | A payment to a Philadelphia-area jeweler for the purpose of purchasing jewelry. |
| 54 | 11/8/2019 | $154,386.00 | BILL OMAR CARRASQUILLO | A withdrawal of funds from TD Bank account ending in x4011 for the purpose of purchasing a 2020 BMW M8. |

All in violation of Title 18, United States Code, Section 1957.

## COUNT FIFTY-FIVE

**THE GRAND JURY FURTHER CHARGES THAT**:

On or about November 20, 2019, in the Eastern District of Pennsylvania,

defendant

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p,"**

in a matter within the jurisdiction the Internal Revenue Service, an agency of the executive

branch of the Government of the United States, knowingly and willfully made a materially false,

fictitious, and fraudulent statement and representation in that defendant CARRASQUILLO

stated that he had sold his McLaren sports car to Person 5 prior to November 20, 2019, in

exchange for $150,000 in cash and diamond earrings, when, as the defendant then knew, he had

not at the time he made the statement sold the McLaren sports car to Person 5.

In violation of Title 18, United States Code, Section 1001.

## COUNT FIFTY-SIX

**THE GRAND JURY FURTHER CHARGES THAT**:

On or about November 20, 2019, in the Eastern District of Pennsylvania,

defendant

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p,"**

in a matter within the jurisdiction the Internal Revenue Service, an agency of the executive

branch of the Government of the United States, knowingly and willfully made a materially false,

fictitious, and fraudulent statement and representation in that defendant CARRASQUILLO

stated that he had sold his 2019 Freightliner Recreational Vehicle prior to November 20, 2019,

when, as the defendant then knew, he had not at the time he made the statement sold the

Freightliner Recreational Vehicle.

In violation of Title 18, United States Code, Section 1001.

## COUNT FIFTY-SEVEN

**THE GRAND JURY FURTHER CHARGES THAT**:

From on or about November 20, 2019 to on or about January 10, 2020, in the

Eastern District of Pennsylvania and elsewhere, defendant

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p,"**

after a search for and seizure of property by Special Agents of the Federal Bureau of

Investigation and the Internal Revenue Service, persons authorized to make such search and

seizure, did knowingly transfer or dispose of a McLaren sports car for the purpose of preventing

and impairing the Government's lawful authority to take said property into its custody and

control and to continue holding such property under its lawful custody and control.

In violation of Title 18, United States Code, Section 2232(a).

## COUNT FIFTY-EIGHT

**THE GRAND JURY FURTHER CHARGES THAT**:

From on or about November 20, 2019 to on or about December 2019, in the Eastern District of Pennsylvania and elsewhere, the defendant,

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p,"**

after the search for and seizure of property by Special Agents of the Federal Bureau of Investigation and the Internal Revenue Service, persons authorized to make such search and seizure, did knowingly transfer or dispose of a 2019 Freightliner Recreational Vehicle for the purpose of preventing and impairing the Government's lawful authority to take said property into its custody and control and to continue holding such property under its lawful custody and control.

In violation of Title 18, United States Code, Section 2232(a).

## COUNTS FIFTY-NINE THROUGH SIXTY-TWO

**THE GRAND JURY FURTHER CHARGES THAT**:

1.     The allegations set forth in Paragraphs 1 through 46 and Overt Acts 1 through 36 of Count One are incorporated by reference.

2.     From 2016 through 2019, defendant BILL OMAR CARRASQUILLO earned millions of dollars in income from the Infringing Service.

3.     During each of the calendar years of 2016 through 2019, defendant BILL OMAR CARRASQUILLO received substantial taxable income upon which there was income tax due and owing to the United States of America.

4.     Despite earning substantial income from 2016 through 2019, defendant BILL OMAR CARRASQUILLO failed to timely file any individual or corporate federal income tax returns for tax years 2016 through 2019, did not pay any taxes due and owing on the income defendant CARRASQUILLO received for the said years, and took various affirmative steps to evade the assessment of taxes on the income that defendant CARRASQUILLO received for the said years, as further described below.

5.     From in or about January of each tax year specified below through on or about the 15th day of April in the following year as specified below, in the Eastern District of Pennsylvania and elsewhere, defendant

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p,"**

willfully attempted to evade and defeat an income tax due and owing by him to the United States of America for the calendar years specified below, each constituting a separate count, by failing

to make an income tax return, as required by law, to any proper officer of the Internal Revenue Service, and by failing to pay to the Internal Revenue Service this income tax, and by concealing and attempting to conceal from all proper officers of the United States of America his true and correct income through various means, including, among other things:

a)    In 2016, defendant CARRASQUILLO caused proceeds from the Infringing Service to be deposited into nominee bank accounts ostensibly held or controlled by Person 6.

b)    In 2017 and 2018, defendant CARRASQUILLO caused proceeds from the Infringing Service to be deposited into a nominee bank account ostensibly held or controlled by Person 2, a substantial portion of which Person 2 then diverted to CARRASQUILLO, including by paying him with checks, items, and large amounts of cash.

c)    In 2018 and 2019, defendant CARRASQUILLO caused proceeds from the Infringing Service to be deposited into nominee merchant service accounts ostensibly held or controlled by defendant JESSE GONZALES.

d)    In 2018, defendant CARRASQUILLO caused proceeds from the Infringing Service to be deposited into a nominee merchant service account ostensibly held or controlled by Person 7.

e)    In 2018, after being advised by a tax return preparer, Person 8, that he would have to pay taxes and file tax returns on significant income, defendant CARRASQUILLO instead hired a new tax return preparer, Person 9.

f)    In 2018, defendant CARRASQUILLO provided Person 9 with inaccurate and incomplete information and business records, ostensibly to prepare his 2016 and 2017 tax returns.

g)    In 2018, defendant CARRASQUILLO provided Person 9 with a list of vehicles that he falsely claimed were for business purposes, ostensibly to prepare his 2016 and 2017 tax returns.

h)    In 2019, defendant CARRASQUILLO caused proceeds from the Infringing Service to be deposited into a nominee merchant service account ostensibly held or controlled by Person 4.

i)    In 2019, defendant CARRASQUILLO caused proceeds from the Infringing Service to be deposited into a nominee merchant service account ostensibly held or controlled by Person 10.

j)   In 2019, defendant CARRASQUILLO provided Person 9 with inaccurate and incomplete information and business records, ostensibly to prepare his 2016, 2017, and 2018 tax returns.

k)   In 2019, after being advised by Person 9 that he would have to pay taxes and file tax returns on significant income, defendant CARRASQUILLO instead hired a new tax return preparer, Person 11, ostensibly to prepare his 2016 through 2018 tax returns.

l)   In 2019, defendant CARRASQUILLO provided Person 11 with inaccurate and incomplete information and business records, ostensibly to prepare his 2016 through 2018 tax returns.

m)   In 2019, defendant CARRASQUILLO obtained personal identifying information from Person 12, for the purpose of creating an IRS Form 1099 that would falsely report substantial income that CARRASQUILLO earned from the Infringing Service as being earned by Person 12.

n)   In 2019, defendant CARRASQUILLO caused personal identifying information from Person 12 to be given to Person 13, a tax return preparer, for the purpose of creating an IRS Form 1099 that would falsely report substantial income that CARRASQUILLO earned from the Infringing Service as being earned by Person 12.

o)   In 2016, 2017, 2018, and 2019, defendant CARRASQUILLO paid a substantial amount of his personal expenses from the Infringing Service's business accounts.

p)   In 2020, defendant CARRASQUILLO provided Person 11 with inaccurate and incomplete information and business records, ostensibly to prepare his 2016 through 2019 tax returns.

q)   Throughout the period from 2016 through 2019, defendant CARRASQUILLO made extensive use of cash, including taking large cash withdrawals from his business accounts and paying cash to independent contractors and others for services performed for CARRASQUILLO.

r)   On November 19, 2019, defendant CARRASQUILLO falsely told an IRS agent that he had filed his tax returns in 2018, through Person 9.

s)   On November 19, 2019, defendant CARRASQUILLO falsely told an IRS agent that he had reported all of his income on the tax returns allegedly filed by Person 9, including the income reported on IRS Form 1099s issued by the payment processors used by the Infringing Service.

| Count | Tax Year |
|-------|----------|
| 59 | 2016 |
| 60 | 2017 |
| 61 | 2018 |
| 62 | 2019 |

All in violation of Title 26, United States Code, Section 7201.

## NOTICE OF FORFEITURE NO. 1

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    As a result of the violations of Title 18, United States Code, Sections 371, 1343, 2319, set forth in this indictment, defendants

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p,"**
**JESSE GONZALES,**
**a/k/a "Wulfy," and**
**MICHAEL BARONE,**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations, including, but not limited to the sum of approximately $34,826,402.00 (Forfeiture Money Judgment), and the following property:

A.    Financial Instruments:

   i.    $5,230,918.26 in United States (hereinafter "U.S.") currency seized from TD Bank Account # 432-9634011, in the name of Bill Omar Carrasquillo;

   ii.    $542,441.50 in U.S. currency seized from Nuvei Technologies, which Nuvei Technologies had been holding for the benefit of "Gears Server";

   iii.    $294,971.33 in U.S. currency seized from Bank of America Account # 3250 9092 0626, in the name of "Jesse Daniel Gonzales Sole Prop DBA GT Subscriptions";

       iv.   $446,428.56 in U.S. currency seized from Bank of America Account # 3251 0986 9791, in the name of "Jesse Daniel Gonzales Sole Prop DBA GT Subscriptions"; and

       v.   $173,250.00 in U.S. currency seized from F&A Federal Credit Union Account # 639700, in the name of Jesse Gonzales and Jennifer L Gonzales;

B.    United States currency:

       i.   $20,020.00 in U.S. currency seized on November 20, 2019, from North Hope Street, Philadelphia, Pennsylvania;

       ii.   $1,190.00 in U.S. currency seized on November 20, 2019, from Lorimer Avenue, Huntingdon Valley, Pennsylvania;

       iii.   $20,850.00 in U.S. currency seized from a 2020 Bentley Continental VIN # SCBCG2ZG1LC074750, registered to and in possession of Bill Omar Carrasquillo;

       iv.   $80,000.00 in U.S. currency seized from a 2018 Mercedes Benz AMG VIN # WDD7X8KB9KA001903, registered to Claudio Roman, Jr., and in possession of Bill Omar Carrasquillo; and

       v.   $62,920.00 in U.S. currency seized on November 20, 2019, from Terradell Street, Pico Rivera, California, 90660;

C.    Vehicles:

       i.   One 2019 Jeep Wrangler, VIN # 1C4HJXEG6KW570874;

       ii.   One 2018 Dodge Commercial ProMaster 2500 159" W.B. High Roof, VIN # 3C6TRVDG7JE148833;

iii.   One 2020 Lamborghini Huracan, VIN # ZHWUF4ZF9LLA12725;

iv.   One 2019 Suzuki Motorcycle, VIN # JS1SK44A0K7101007;

v.   One 2019 Chevrolet Camaro, VIN # 1G1FH1R79K0108119;

vi.   One 2018 Dodge Durango, VIN # 1C4SDJGJ4JC416019;

vii.   One 2019 Suzuki DRZ400 Motorcycle, VIN # JS1SK44A3K7100952;

viii.   One 2019 Yamaha 700R four wheel off road vehicle, VIN # 5Y4AM8631KA104297;

ix.   One 2020 Jeep Gladiator, VIN # 1C6JJTBG2LL101726;

x.   One 2019 Dodge Challenger, VIN # 2C3CDZL9XKH591151;

xi.   One 2018 Suzuki DRZ400 Motorcycle, VIN # JS1SK44A9J2102474;

xii.   One 2017 Ford F350 truck, VIN #1FT8W3DT9HED56274;

xiii.   One 2019 Can-Am Ryker, VIN # 3JB2FEG49KJ002752;

xiv.   One 2019 Audi A7, VIN # WAUS2AF24KN105368;

xv.   One 2018 KTM 1290 Super Duke Motorcycle, VIN # VBKV39400JM987624;

xvi.   One 2019 Ford Mustang, VIN # 1FA6P8TH2K5180423;

xvii.   One 2019 Acura NSX, VIN # 19UNC1B0XKY000173;

xviii.   One 2015 Lamborghini Huracan, VIN # ZHWUC1ZF4FLA02602;

xix.   One 2019 Lamborghini Aventador, VIN # ZHWUV4ZD0KLA07980;

xx.   One 2018 Jeep Grand Cherokee, VIN # 1C4RJFN91JC405394;

xxi.   One 2019 Mercedes Benz GLE Class Utility AMG Sports Coupe, VIN # 4JGED6EB4KA139824;

xxii.   One 2020 Toyota Supra, VIN # WZ1DB4C05LW022111;

xxiii.      One Bentley Continental GT / SuperSport Coupe, VIN #

            SCBCG2ZG1LC074750;

xxiv.      One Jeep Grand Cherokee Trackhawk 4WD 6.2L V8 Supercharged,

            VIN # 1C4RJFN93JC224779;

xxv.       One 2016 Ford Mustang, VIN # 1FA6P8CF0G5319034;

xxvi.      One 2016 Dodge Charger, VIN # 2C3CDXL9XGH312311;

xxvii.     One 2017 Chevrolet Tahoe, VIN # 1GNSKDEC8HR228971;

xxviii.    One 2019 Honda Civic, VIN # SHHFK8G70KU200613;

xxix.      One 1996 Chevrolet Caprice, VIN # 1G1BL52P0TR122129;

xxx.       One 2020 BMW M8, VIN # WBSAE0C00LBM08405;

xxxi.      One 2019 Chevrolet Corvette, VIN # 1G1YY2D77K5104515;

xxxii.     One 2019 Dodge Ram, VIN # 1C6SRFHT8KN533937;

xxxiii.    One Backdraft Roadster Coupe, VIN # AE9BMAAH3H1MT1025;

xxxiv.     One 2016 Dodge Challenger, VIN # 2C3CDZC91GH113370;

xxxv.      One Mercedes Benz GT63C4S, VIN # WDD7X8KB9KA001903;

xxxvi.     One Dodge Grand Caravan SE, VIN # 2C4RDGBG5KR751876;

xxxvii.    One 2018 Polaris Outlaw, VIN # RF3YAK05XJT065024;

xxxviii.   One 2019 Polaris Ranger XP with Plow, VIN #

            4XARRW990K8546570;

xxxix.     One 2019 Yamaha 50 Child's Motorcycle, VIN #

            LBPCA0230K0013324;

xl.        One 2020 Yamaha PW50, VIN # JYA3PT136LA028317;

xli.       One 2018 KTM 690 Duke, VIN # VBKLDV401JM714429;

xlii.    One 2019 Yamaha Raptor ATV, VIN # RF3AB1131KT004006;

xliii.   One 2019 Honda 110 Motorcycle, VIN # LALJE024XK3101900;

xliv.    One 2019 Polaris RZR ATV, VIN # RF3YAV171KT029290;

xlv.     One 2019 Honda TRX ATV, VIN # 1HFTE2733K4801310;

xlvi.    One 2019 Honda 110 Motorcycle, VIN # LALJE0245K3102145;

xlvii.   One 2019 KTM 790 Duke, VIN # VBKTU6406KM739334;

xlviii.  One 2019 KTM 390 Duke Motorcycle, VIN # MD2JPJ401KC216497;

xlix.    One 2019 KTM 390 Duke Motorcycle, VIN # MD2JPJ402KC206710;

l.       One 2018 Honda CTX700N Motorcycle, VIN #

         JH2RC6840JK300174;

li.      One 2019 Honda Rebel 500 Motorcycle, VIN #

         MLHPC5605K5201678;

lii.     One 2018 Honda Rebel 500 Motorcycle, VIN #

         MLHPC5601J5100071;

liii.    One 2019 KTM 790 Motorcycle, VIN # VBKTR3409KM765748;

liv.     One 2019 Honda CRF450L Motorcycle, VIN #

         JH2PD1115KK002373;

lv.      One 2019 Yamaha YZ125 Motorcycle, VIN #

         JYACE16C6KA039562;

lvi.     One 2019 Lamborghini Urus 2019, VIN # ZPBUA1ZL9KLA01398;

lvii.    One 2020 Audi R8, VIN # WUAEEAFX1L7900342; and

lviii.   Net proceeds in the amount of $6,000.00 in lieu of one 2018 Yamaha Raptor 700 all-terrain vehicle seized on December 17, 2019, in Deptford, New Jersey;

D.   Real Properties:

i.   The real property known as 108 W. Ontario Street, Philadelphia, PA 19140;

ii.   The re.al property known as 110 W. Ontario Street, Philadelphia, PA 19140;

iii.   The real property known as 120 Fox Chase Court, Woolwich Twp, NJ 08085;

iv.   The real property known as 145 Kingston Road, Cheltenham, PA 19012;

v.   The real property known as 1800 Pratt Street, Philadelphia, PA 19124;

vi.   The real property known as 1948 N. Darien Street, Philadelphia, PA 19122;

vii.   The real property known as 1958 N. Darien Street, Philadelphia, PA 19122;

viii.   The real property known as 2010 N. Darien Street, Philadelphia, PA 19122;

ix.   The real property known as 2135 N. Stanley Street, Philadelphia, PA 19121;

x.   The real property known as 2140 Eastburn Avenue, Philadelphia, PA 19138;

xi.     The real property known as 2303-07 Germantown Avenue, Philadelphia, PA 19133;

xii.    The real property known as 235 Linton Street, Philadelphia, PA 19120;

xiii.   The real property known as 2412 N. 2nd Street, Philadelphia, PA 19140;

xiv.    The real property known as 2457 N. 2nd Street, Philadelphia, PA 19133;

xv.     The real property known as 2539 N. Leithgow Street, Philadelphia, PA 19133;

xvi.    The real property known as 2544 N. Hancock Street, Philadelphia, PA 19133;

xvii.   The real property known as 2559 N. Hope Street, Philadelphia, PA 19133;

xviii.  The real property known as 2713 N. Hope Street, Philadelphia, PA 19133;

xix.    The real property known as 2814 A Street, Philadelphia, PA 19134;

xx.     The real property known as 3005 N. American Street, Philadelphia, PA 19133;

xxi.    The real property known as 3007 N. American Street, Philadelphia, PA 19133;

xxii.   The real property known as 3009 N. American Street, Philadelphia, PA 19133;

xxiii.    The real property known as 3065 N. Darien Street, Philadelphia, PA 19133;

xxiv.    The real property known as 3159 N. Darien Street, Philadelphia, PA 19133;

xxv.    The real property known as 3338 N. Hope Street, Philadelphia, PA 19140;

xxvi.    The real property known as 3357 N. Hope Street, Philadelphia, PA 19140;

xxvii.    The real property known as 3358 N. Hope Street, Philadelphia, PA 19140;

xxviii.    The real property known as 3360 N. Hope Street, Philadelphia, PA 19140;

xxix.    The real property known as 3365 N. Hope Street, Philadelphia, PA 19140;

xxx.    The real property known as 3407 N. Hope Street, Philadelphia, PA 19140;

xxxi.    The real property known as 3417 N. Hope Street, Philadelphia, PA 19140;

xxxii.    The real property known as 3426 N. Hope Street, Philadelphia, PA 19140;

xxxiii.    The real property known as 3435 N. Hope Street, Philadelphia, PA 19140;

xxxiv.   The real property known as 3508 Mascher Street, Philadelphia, PA 19140;

xxxv.   The real property known as 3753 Kensington Avenue, Philadelphia, PA 19124;

xxxvi.   The real property known as 4034 N. 8th Street, Philadelphia, PA 19140;

xxxvii.   The real property known as 4210-32 Macalester Avenue, Philadelphia, PA 19122;

xxxviii.   The real property known as 434 Delphine Street, Philadelphia, PA 19120;

xxxix.   The real property known as 4808 N. Warnock Street, Philadelphia, PA 19141;

xl.   The real property known as 5712 N. Camac Street, Philadelphia, PA 19141;

xli.   The real property known as 600 E. Cornwall Street, Philadelphia, PA 19134;

xlii.   The real property known as 7112 Yocum Street, Philadelphia, PA 19142;

xliii.   The real property known as 920 W. Huntingdon Street, Philadelphia, PA 19133;

xliv.   The real property known as 2353-55 N. 2nd Street, Philadelphia, PA 19133;

xlv.   The real property known as 401 Fern Road, Millville, NJ 08332;

xlvi.  The real property known as 0 Main Street AKA Race Street, Brookhaven, PA 19015;

xlvii.  The real property known as 3430 N. Ella Street, Philadelphia, PA 19134;

xlviii.  The real property known as 5960 N. Leithgow Street, Philadelphia, PA 19120;

xlix.  The real property known as 739 E. Willard Street, Philadelphia, PA 19134;

l.  The real property known as 750 E. Willard Street, Philadelphia, PA 19134;

li.  The real property known as 834 E. Cornwall Street, Philadelphia, PA 19134; and

lii.  The real property known as 1841 E. Wensley Street, Philadelphia, PA 19134.

2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the Court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United

States Code, Section 981(a)(1)(C).

## NOTICE OF FORFEITURE NO. 2

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     As a result of the violations of Title 18, United States Code, Section 1014, set forth in this indictment, defendants

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p," and**
**JESSE GONZALES,**
**a/k/a, "Wulfy,"**

shall forfeit to the United States, any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such violations.

2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    (a)     cannot be located upon the exercise of due diligence;

    (b)     has been transferred or sold to, or deposited with, a third party;

    (c)     has been placed beyond the jurisdiction of the Court;

    (d)     has been substantially diminished in value; or

    (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(2)(A).

## NOTICE OF FORFEITURE NO. 3

**THE GRAND JURY FURTHER CHARGES THAT:**

1.  As a result of the violations of Title 18, United States Code, Sections 371, and 1029(a)(2), (c)(1)(a)(i), set forth in this indictment, defendants

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p,"**
**JESSE GONZALES,**
**a/k/a "Wulfy," and**
**MICHAEL BARONE,**

shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such violations, including, but not limited to, the sum of approximately $34,826,402.00 (Forfeiture Money Judgment), and the following property:

A.  Financial Instruments:

    i.  $5,230,918.26 in United States (hereinafter "U.S.") currency seized from TD Bank Account # 432-9634011, in the name of Bill Omar Carrasquillo;

    ii. $542,529.50 in U.S. currency seized from Nuvei Technologies, which Nuvei Technologies had been holding for the benefit of "Gears Server";

    iii. $294,971.33 in U.S. currency seized from Bank of America Account # 3250 9092 0626, in the name of "Jesse Daniel Gonzales Sole Prop DBA GT Subscriptions";

iv.   $446,428.56 in U.S. currency seized from Bank of America Account # 3251 0986 9791, in the name of "Jesse Daniel Gonzales Sole Prop DBA GT Subscriptions"; and

v.   $173,250.00 in U.S. currency seized from F&A Federal Credit Union Account # 639700, in the name of Jesse Gonzales and Jennifer L Gonzales;

B.   United States currency:

i.   $20,020.00 in U.S. currency seized on November 20, 2019, from North Hope Street, Philadelphia, Pennsylvania;

ii.   g$1,190.00 in U.S. currency seized on November 20, 2019, from Lorimer Avenue, Huntingdon Valley, Pennsylvania;

iii.   $20,850.00 in U.S. currency seized from a 2020 Bentley Continental VIN # SCBCG2ZG1LC074750, registered to and in possession of Bill Omar Carrasquillo;

iv.   $80,000.00 in U.S. currency seized from a 2018 Mercedes Benz AMG VIN # WDD7X8KB9KA001903, registered to Claudio Roman, Jr., and in possession of Bill Omar Carrasquillo; and

v.   $62,920.00 in U.S. currency seized on November 20, 2019, from Terradell Street, Pico Rivera, California 90660;

C.   Vehicles:

i.   One 2019 Jeep Wrangler, VIN # 1C4HJXEG6KW570874;

ii.   One 2018 Dodge Commercial ProMaster 2500 159" W.B. High Roof, VIN # 3C6TRVDG7JE148833;

iii.   One 2020 Lamborghini Huracan, VIN # ZHWUF4ZF9LLA12725;

iv.   One 2019 Suzuki Motorcycle, VIN # JS1SK44A0K7101007;

v.   One 2019 Chevrolet Camaro, VIN # 1G1FH1R79K0108119;

vi.   One 2018 Dodge Durango, VIN # 1C4SDJGJ4JC416019;

vii.   One 2019 Suzuki DRZ400 Motorcycle, VIN # JS1SK44A3K7100952;

viii.   One 2019 Yamaha 700R four wheel off road vehicle, VIN #
5Y4AM8631KA104297;

ix.   One 2020 Jeep Gladiator, VIN # 1C6JJTBG2LL101726;

x.   One 2019 Dodge Challenger, VIN # 2C3CDZL9XKH591151;

xi.   One 2018 Suzuki DRZ400 Motorcycle, VIN # JS1SK44A9J2102474;

xii.   One 2017 Ford F350 truck, VIN #1FT8W3DT9HED56274;

xiii.   One 2019 Can-Am Ryker, VIN # 3JB2FEG49KJ002752;

xiv.   One 2019 Audi A7, VIN # WAUS2AF24KN105368;

xv.   One 2018 KTM 1290 Super Duke Motorcycle, VIN #
VBKV39400JM987624;

xvi.   One 2019 Ford Mustang, VIN # 1FA6P8TH2K5180423;

xvii.   One 2019 Acura NSX, VIN # 19UNC1B0XKY000173;

xviii.   One 2015 Lamborghini Huracan, VIN # ZHWUC1ZF4FLA02602;

xix.   One 2019 Lamborghini Aventador, VIN # ZHWUV4ZD0KLA07980;

xx.   One 2018 Jeep Grand Cherokee, VIN # 1C4RJFN91JC405394;

xxi.   One 2019 Mercedes Benz GLE Class Utility AMG Sports Coupe, VIN
# 4JGED6EB4KA139824;

xxii.   One 2020 Toyota Supra, VIN # WZ1DB4C05LW022111;

xxiii.  One Bentley Continental GT / SuperSport Coupe, VIN # SCBCG2ZG1LC074750;

xxiv.  One Jeep Grand Cherokee Trackhawk 4WD 6.2L V8 Supercharged, VIN # 1C4RJFN93JC224779;

xxv.  One 2016 Ford Mustang, VIN # 1FA6P8CF0G5319034;

xxvi.  One 2016 Dodge Charger, VIN # 2C3CDXL9XGH312311;

xxvii.  One 2017 Chevrolet Tahoe, VIN # 1GNSKDEC8HR228971;

xxviii.  One 2019 Honda Civic, VIN # SHHFK8G70KU200613;

xxix.  One 1996 Chevrolet Caprice, VIN # 1G1BL52P0TR122129;

xxx.  One 2020 BMW M8, VIN # WBSAE0C00LBM08405;

xxxi.  One 2019 Chevrolet Corvette, VIN # 1G1YY2D77K5104515;

xxxii.  One 2019 Dodge Ram, VIN # 1C6SRFHT8KN533937;

xxxiii.  One Backdraft Roadster Coupe, VIN # AE9BMAAH3H1MT1025;

xxxiv.  One 2016 Dodge Challenger, VIN # 2C3CDZC91GH113370;

xxxv.  One Mercedes Benz GT63C4S, VIN # WDD7X8KB9KA001903;

xxxvi.  One Dodge Grand Caravan SE, VIN # 2C4RDGBG5KR751876;

xxxvii.  One 2018 Polaris Outlaw, VIN # RF3YAK05XJT065024;

xxxviii.  One 2019 Polaris Ranger XP with Plow, VIN # 4XARRW990K8546570;

xxxix.  One 2019 Yamaha 50 Child's Motorcycle, VIN # LBPCA0230K0013324;

xl.  One 2020 Yamaha PW50, VIN # JYA3PT136LA028317;

xli.  One 2018 KTM 690 Duke, VIN # VBKLDV401JM714429;

xlii.  One 2019 Yamaha Raptor ATV, VIN # RF3AB1131KT004006;

xliii.  One 2019 Honda 110 Motorcycle, VIN # LALJE024XK3101900;

xliv.  One 2019 Polaris RZR ATV, VIN # RF3YAV171KT029290;

xlv.  One 2019 Honda TRX ATV, VIN # 1HFTE2733K4801310;

xlvi.  One 2019 Honda 110 Motorcycle, VIN # LALJE0245K3102145;

xlvii.  One 2019 KTM 790 Duke, VIN # VBKTU6406KM739334;

xlviii.  One 2019 KTM 390 Duke Motorcycle, VIN # MD2JPJ401KC216497;

xlix.  One 2019 KTM 390 Duke Motorcycle, VIN # MD2JPJ402KC206710;

l.  One 2018 Honda CTX700N Motorcycle, VIN # JH2RC6840JK300174;

li.  One 2019 Honda Rebel 500 Motorcycle, VIN # MLHPC5605K5201678;

lii.  One 2018 Honda Rebel 500 Motorcycle, VIN # MLHPC5601J5100071;

liii.  One 2019 KTM 790 Motorcycle, VIN # VBKTR3409KM765748;

liv.  One 2019 Honda CRF450L Motorcycle, VIN # JH2PD1115KK002373;

lv.  One 2019 Yamaha YZ125 Motorcycle, VIN # JYACE16C6KA039562;

lvi.  One 2019 Lamborghini Urus 2019, VIN # ZPBUA1ZL9KLA01398;

lvii.  One 2020 Audi R8, VIN # WUAEEAFX1L7900342; and

lviii.  Net proceeds in the amount of $6,000.00 in lieu of one 2018 Yamaha

Raptor 700 all-terrain vehicle seized on December 17, 2019, in

Deptford, New Jersey;

D.  Real Properties:

i.  The real property known as 108 W. Ontario Street, Philadelphia, PA

19140;

ii.  The real property known as 110 W. Ontario Street, Philadelphia, PA

19140;

iii.  The real property known as 120 Fox Chase Court, Woolwich Twp, NJ

08085;

iv.  The real property known as 145 Kingston Road, Cheltenham, PA

19012;

v.  The real property known as 1800 Pratt Street, Philadelphia, PA 19124;

vi.  The real property known as 1948 N. Darien Street, Philadelphia, PA

19122;

vii.  The real property known as 1958 N. Darien Street, Philadelphia, PA

19122;

viii.  The real property known as 2010 N. Darien Street, Philadelphia, PA

19122;

ix.  The real property known as 2135 N. Stanley Street, Philadelphia, PA

19121;

x.  The real property known as 2140 Eastburn Avenue, Philadelphia, PA

19138;

xi.  The real property known as 2303-07 Germantown Avenue, Philadelphia, PA 19133;

xii.  The real property known as 235 Linton Street, Philadelphia, PA 19120;

xiii.  The real property known as 2412 N. 2nd Street, Philadelphia, PA 19140;

xiv.  The real property known as 2457 N. 2nd Street, Philadelphia, PA 19133;

xv.  The real property known as 2539 N. Leithgow Street, Philadelphia, PA 19133;

xvi.  The real property known as 2544 N. Hancock Street, Philadelphia, PA 19133;

xvii.  The real property known as 2559 N. Hope Street, Philadelphia, PA 19133;

xviii.  The real property known as 2713 N. Hope Street, Philadelphia, PA 19133;

xix.  The real property known as 2814 A Street, Philadelphia, PA 19134;

xx.  The real property known as 3005 N. American Street, Philadelphia, PA 19133;

xxi.  The real property known as 3007 N. American Street, Philadelphia, PA 19133;

xxii.  The real property known as 3009 N. American Street, Philadelphia, PA 19133;

xxiii.   The real property known as 3065 N. Darien Street, Philadelphia, PA 19133;

xxiv.   The real property known as 3159 N. Darien Street, Philadelphia, PA 19133;

xxv.   The real property known as 3338 N. Hope Street, Philadelphia, PA 19140;

xxvi.   The real property known as 3357 N. Hope Street, Philadelphia, PA 19140;

xxvii.   The real property known as 3358 N. Hope Street, Philadelphia, PA 19140;

xxviii.   The real property known as 3360 N. Hope Street, Philadelphia, PA 19140;

xxix.   The real property known as 3365 N. Hope Street, Philadelphia, PA 19140;

xxx.   The real property known as 3407 N. Hope Street, Philadelphia, PA 19140;

xxxi.   The real property known as 3417 N. Hope Street, Philadelphia, PA 19140;

xxxii.   The real property known as 3426 N. Hope Street, Philadelphia, PA 19140;

xxxiii.   The real property known as 3435 N. Hope Street, Philadelphia, PA 19140;

xxxiv.   The real property known as 3508 Mascher Street, Philadelphia, PA 19140;

xxxv.   The real property known as 3753 Kensington Avenue, Philadelphia, PA 19124;

xxxvi.   The real property known as 4034 N. 8th Street, Philadelphia, PA 19140;

xxxvii.   The real property known as 4210-32 Macalester Avenue, Philadelphia, PA 19122;

xxxviii.   The real property known as 434 Delphine Street, Philadelphia, PA 19120;

xxxix.   The real property known as 4808 N. Warnock Street, Philadelphia, PA 19141;

xl.   The real property known as 5712 N. Camac Street, Philadelphia, PA 19141;

xli.   The real property known as 600 E. Cornwall Street, Philadelphia, PA 19134;

xlii.   The real property known as 7112 Yocum Street, Philadelphia, PA 19142;

xliii.   The real property known as 920 W. Huntingdon Street, Philadelphia, PA 19133;

xliv.   The real property known as 2353-55 N. 2nd Street, Philadelphia, PA 19133;

xlv.   The real property known as 401 Fern Road, Millville, NJ 08332;

xlvi. The real property known as 0 Main Street AKA Race Street, Brookhaven, PA 19015;

xlvii. The real property known as 3430 N. Ella Street, Philadelphia, PA 19134;

xlviii. The real property known as 5960 N. Leithgow Street, Philadelphia, PA 19120;

xlix. The real property known as 739 E. Willard Street, Philadelphia, PA 19134;

l. The real property known as 750 E. Willard Street, Philadelphia, PA 19134;

li. The real property known as 834 E. Cornwall Street, Philadelphia, PA 19134; and

lii. The real property known as 1841 E. Wensley Street, Philadelphia, PA 19134;

and any personal property used or intended to be used to commit such violations.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Sections 982(b) and 1029(c)(2), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 1029(c)(1)(C).

## NOTICE OF FORFEITURE NO. 4

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     As a result of the violations of Title 18, United States Code, Section 1957, set forth in this indictment, defendants

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p," and**
**JESSE GONZALES,**
**a/k/a "Wulfy,"**

shall forfeit to the United States of America any property, real or personal, involved in such offenses, or any property traceable to such property, including, but not limited to the following:

    A.   Vehicles:

        i.    One 2019 Lamborghini Aventador, VIN # ZHWUV4ZD0KLA07980;

       ii.    One 2020 Lamborghini Huracan, VIN # ZHWUF4ZF9LLA12725;

      iii.    One 2019 Lamborghini Urus 2019, VIN # ZPBUA1ZL9KLA01398;

      iv.    One Mercedes Benz GT63C4S, VIN # WDD7X8KB9KA001903;

       v.    One 2019 Acura NSX, VIN # 19UNC1B0XKY000173;

      vi.    One 2020 BMW M8, VIN # WBSAE0C00LBM08405;

     vii.    One 2019 Dodge Challenger, VIN # 2C3CDZL9XKH591151;

    viii.    One 2019 Mercedes Benz GLE Class Utility AMG Sports Coupe, VIN # 4JGED6EB4KA139824;

      ix.    One 2019 Dodge Ram, VIN # 1C6SRFHT8KN533937; and

       x.    One 2019 Chevrolet Corvette, VIN # 1G1YY2D77K5104515.

    B.   Real Property:

    i.    The real property known as 120 Fox Chase Court, Swedesboro, New Jersey, 08085.

    2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

    All pursuant to Title 18, United States Code, Section 982(a)(1).

## NOTICE OF FORFEITURE NO. 5

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    As a result of the violations of Title 17, United States Code, Section 506 and Title 18, United States Code, Section 2319, set forth in this indictment, defendants

**BILL OMAR CARRASQUILLO,**
**a/k/a "Omar,"**
**a/k/a "Omi,"**
**a/k/a "Target,"**
**a/k/a "Targetin1080p,"**
**JESSE GONZALES,**
**a/k/a "Wulfy," and**
**MICHAEL BARONE,**

shall forfeit to the United States any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of such offenses.

      2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

        (a)    cannot be located upon the exercise of due diligence;

        (b)    has been transferred or sold to, or deposited with, a third party;

        (c)    has been placed beyond the jurisdiction of the Court;

        (d)    has been substantially diminished in value; or

        (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 2323(b)(2), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 2323(b)(1).

A TRUE BILL:

_____

**GRAND JUR**

_JENNIFER ARBITTIER WILLIAMS_ for
**JENNIFER ARBITTIER WILLIAMS**
**Acting United States Attorney**

No. _ _ _ _ _ _ _ _ _

# UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

<u>Criminal Division</u>

## THE UNITED STATES OF AMERICA

vs.

**BILL OMAR CARRASQUILLO,**

a/k/a "Omar," a/k/a "Omi," a/k/a "Target," a/k/a "Targetin1080p,"

**JESSE GONZALES,**

a/k/a "Wulfy,"

**MICHAEL BARONE**

18 U.S.C § 371 (conspiracy - 1 count), 17 U.S.C. §§ 1201(a)1)(A), 1204(a)(1) (circumvention of access control device – 1 count), 17 U.S.C. § 506(a)(1)(A); 18 U.S.C. § 2319(b)(1) (reproduction of a protected work – 1 count), 17 U.S.C. § 506(a)(1)(A); 18 U.S.C. § 2319(b)(3) (public performance of a protected work – 19 counts), 18 U.S.C. § 1029(a)(2), (c)(1)(a)(i) (access device fraud – 4 counts), 18 U.S.C. § 1343 (wire fraud – 6 counts), 18 U.S.C. § 1014 (false statements to a bank – 3 counts), 18 U.S.C. § 1957 (engaging in monetary transactions derived from specified unlawful activity – 19 counts), 18 U.S.C. § 1001 (false statement – 2 counts), 18 U.S.C. § 2232(a) (removal of property to prevent seizure – 3 counts), 26 U.S.C. § 7201 (tax evasion – 4 counts)

_____

Foreman

_____

Filed in open court this _____ day,

Of _____ A.D. 20 _____

_____

Clerk

_____

Bail, $ _____